Filed 1/12/22  P. v. Esquivel CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE ANTONIO ESQUIVEL,<br><br>    Defendant and Appellant. | D079448<br><br><br><br>(Super. Ct. No. SS161405A) |

APPEAL from a judgment of the Superior Court of Monterey County, Pamela L. Butler, Judge.  Affirmed.

Eric Weaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Basil R. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Jose Antonio Esquivel of kidnapping Jane Doe for the purpose of committing rape, sodomy, or oral copulation (Pen. Code, § 209, subd. (b)(1)) and multiple counts of forcible rape, sodomy and oral copulation

acting in concert (§§ 264.1, subd. (a), 286, subd. (d)(1); former § 288a, subd. (d)(1); see current § 287, subd. (d)(1)).[1]  In addition, the jury found true the allegations that the kidnapping was committed with substantial movement and increased risk to the victim and involved the personal infliction of great bodily injury.  (§ 667.61, subds. (a), (d)(2), (d)(5) and (d)(6).)  The trial court sentenced Esquivel to an indeterminate life sentence pursuant to the "One Strike" law (§ 667.61), making him ineligible for a youth offender parole hearing under subdivision (h) of section 3051.

On appeal, Esquivel asserts an equal protection claim.  He contends it is unlawful to allow defendants convicted of first degree murder to obtain youth offender parole hearings, while categorically excluding defendants like him who are sentenced under the One Strike law from obtaining those hearings.  We reject Esquivel's equal protection claim and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2013, 18-year-old Jane Doe and her girlfriend traveled from their home in Oakland to Salinas in a car with a friend.  Sometime that night, the women spent about 45 minutes at a bar, and, because their friend "had to use the car," they arranged to get a ride to their hotel with Esquivel and another man.  When they left the bar, the women sat in the vehicle's back seat, Esquivel sat in the front passenger seat, and his friend drove.  The men drove past the hotel where the women were staying, stopped at an ATM, then drove to a field.  Both women jumped from the car and attempted to flee.  Doe's girlfriend escaped, but the men overpowered Doe, forced her back into the car, and drove off.  Doe thought the men would kill her.

---

[1]     Unless otherwise indicated, statutory citations are to the Penal Code.

2

Doe's girlfriend flagged down a passing motorist and said, " 'Help me, 'cause they're gonna kill my friend.' " The motorist told the friend to get in, and they attempted to follow the men, but they lost track of them. Officers responding to a report of a possible kidnapping saw a vehicle flashing its headlights and stopped at the side of the road. Doe's girlfriend exited the vehicle from the passenger side yelling that someone had kidnapped her girlfriend.

Meanwhile, Esquivel, who was in the back seat while his friend drove, removed Doe's clothes and underwear and forced her to "snort" something that burned her nose. Esquivel forced Doe to orally copulate him and to have vaginal sex with him. She cried and pleaded with him not to kill her.

The driver stopped the car three times. At the first stop, the men removed Doe from the car, bent her over the trunk, and both men forced her to have vaginal and anal sex with them. Doe pleaded with them to stop. When they got back in the car, Esquivel forced Doe to orally copulate him.

At the second stop, Esquivel pulled Doe from the car and again forced her to have vaginal sex with him. When they got back in the car, Esquivel again forced Doe to orally copulate him.

At the third stop, Esquivel again forced Doe to have vaginal sex with him and ejaculated inside of her.

Eventually, the men dropped Doe off near a gas station, where she called 911.[2] Officers arrived and observed that Doe was visibly upset and appeared to have been crying. Doe said that she had been kidnapped and

_____

[2] The timeline of events is unclear from the record. It appears Doe called 911 sometime during the morning of August 24. The offenses were estimated to have occurred "[o]n or about August 24."

3

raped. Officers brought Doe to the hospital, where she underwent a sexual assault examination.

The nurse that performed the sexual assault examination testified that Doe had abrasions, bruises and scratches on her arms and legs. She did not have any injuries to her vagina or anus. The nurse testified that she found such injuries in less than half of the examinations she performed. The nurse collected Doe's clothes, which were soiled and contained bits of debris. The nurse also collected blood samples and biological swabs from Doe's vagina and anus. Doe's blood tested positive for low levels of methamphetamine. There were two male DNA contributors to the anal swab sample and one male DNA contributor to the vaginal swab sample. DNA from the vaginal swab matched a sample taken from Esquivel. Esquivel could not be excluded as a contributor to the anal sample.

A jury convicted Esquivel of one count of kidnapping for the purpose of committing rape, sodomy, or oral copulation (§ 209, subd. (b)(1); count 1), four counts of rape acting in concert (§ 264.1, subd. (a); counts 2-5), one count of forcible sodomy acting in concert (§ 286, subd. (d)(1); count 6), and two counts of forcible oral copulation acting in concert (former § 288a, subd. (d)(1), see current § 287, subd. (d)(1); counts 7-8). With respect to counts 2 through 5, the jury found true the allegation that Esquivel inflicted great bodily injury (§§ 12022.8, 1192.7, subd. (c)(8)) and, with respect to counts 2 through 8, that the kidnapping was committed with substantial movement and increased risk to the victim (§ 667.61, subds. (a), (d)(2), and (d)(5)), and involved the personal infliction of great bodily injury (*id*., subds. (a), (d)(6)).

4

The trial court sentenced Esquivel to a total term of 105 years to life, comprised of four consecutive terms of 25 years to life on counts 2 through 5, plus five years for the great bodily injury enhancement on count 5.[3]

DISCUSSION

Esquivel was sentenced pursuant to the One Strike law and is consequently ineligible for a youth offender parole hearing as a result of the exclusion in section 3051, subdivision (h).[4] He contends that this exclusion violates his equal protection rights under the United States and California Constitutions because certain youth offenders convicted of first degree murder are not similarly excluded.[5] The Courts of Appeal are divided on the issue of whether the exclusion of One Strike sex offenders from the youth

---

[3]    Additional terms on other counts and enhancements were also imposed, but the additional terms were ordered to run concurrent to the sentence or stayed pursuant to section 654.

[4]    There was some dispute as to Esquivel's date of birth.  The trial court appeared to accept Esquivel's assertion that he was born on April 18, 1989, making him 24 years old at the time of the offenses.  For purposes of our analysis, we assume Esquivel was in fact 24 years old at the time of the offenses.

[5]    A defendant who commits first degree murder could be ineligible for other reasons which are not at issue here, such as a defendant who was sentenced under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12), a defendant who was sentenced to life without the possibility of parole and was over the age of 18 when he or she committed the offense, and defendants "to whom [the statute] would otherwise apply, but who, subsequent to attaining 26 years of age, commit[] an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison."  (§ 3051, subd. (h).)

5

offender parole hearing scheme violates principles of equal protection.[6] The California Supreme Court is currently considering whether it violates equal protection to exclude young adults convicted under the One Strike law from youth offender parole consideration under section 3051 when offenders convicted of first degree murder are not excluded. (*Williams, supra,* 47 Cal.App.5th 475, review granted.) Pending the Supreme Court's resolution of this issue, we continue to follow this court's decision in *Williams* rejecting an equal protection challenge to the exclusion of One Strike offenders from youth offender parole hearings.

The One Strike law (§ 667.61) "sets forth an alternative and harsher sentencing scheme for certain enumerated sex crimes perpetrated by force, including rape, foreign object penetration, sodomy, and oral copulation." (*People v. Mancebo* (2002) 27 Cal.4th 735, 741, fn. omitted.) When the jury has convicted a defendant of a specified sex crime and has also found certain factual allegations to be true, the defendant must be sentenced to 15 years to life, 25 years to life, or life without the possibility of parole. (See *People v.*

---

6    See *People v. Edwards* (2019) 34 Cal.App.5th 183, 194-200 (*Edwards*) [concluding that equal protection renders youthful sex offenders sentenced under the One Strike law eligible for youth offender parole hearings]; *In re Woods* (2021) 62 Cal.App.5th 740, 760, review granted June 16, 2021, S268740 [same]; *People v. Williams* (2020) 47 Cal.App.5th 475, 493, review granted July 22, 2020, S262229 (*Williams*) [rejecting equal protection challenge to section 3051, subdivision (h) because rational basis exists for making One Strike offenders ineligible for youth offender parole hearings]; *People v. Miranda* (2021) 62 Cal.App.5th 162, 186-187, review granted June 16, 2021, S268384 (*Miranda*) [same]; *People v. Moseley* (2021) 59 Cal.App.5th 1160, 1169, review granted April 14, 2021, S267309 [declining to find that a youthful sex offender is similarly situated to a youthful murderer because "they are different crimes," but nonetheless concluding that excluding One Strike offenders from youth offender parole consideration is rationally related to a legitimate penal interest].

*Anderson* (2009) 47 Cal.4th 92, 102; § 667.61, subds. (a), (b), (j), and (l).)
Here, it is undisputed that Esquivel was convicted of offenses which
subjected him to sentences of 25 years to life under the One Strike law.[7]

The Legislature enacted section 3051 in 2013 in response to a series of
decisions establishing constitutional limits on the length of sentences for
juvenile offenders.  (See Stats. 2013, ch. 312, § 4; *People v. Franklin* (2016)
63 Cal.4th 261, 277.)  Section 3051 establishes " 'a parole eligibility
mechanism that provides a person serving a sentence for crimes that he or
she committed as a juvenile the opportunity to obtain release when he or she
has shown that he or she has been rehabilitated and gained maturity . . . .' "
(*Franklin*, at p. 277.)  Under section 3051, youth offenders who committed
their "controlling offense" when they were 25 years old or younger are
entitled to a parole hearing after serving a designated period in custody.
(§ 3051, subds. (b), (e).)[8]  A "controlling offense" is "the offense or
enhancement for which any sentencing court imposed the longest term of
imprisonment."  (§ 3051, subd. (a)(2)(B).)  Section 3051, subdivision (b)(3)
states:  "A person who was convicted of a controlling offense that was
committed when the person was 25 years of age or younger and for which the
sentence is a life term of 25 years to life shall be eligible for release on parole
at a youth offender parole hearing during the person's 25th year of

---

[7]     Esquivel does not challenge the judgment or his sentence, only his
ineligibility for a youth offender parole hearing.

[8]     Originally, section 3051 applied when the controlling offense was
committed before the offender was 18 years old.  (Stats. 2013, ch. 312, § 4
(Sen. Bill No. 260).)  The Legislature subsequently expanded youth offender
parole hearings to offenders under 23 years old (Stats. 2015, ch. 471, § 1 (Sen.
Bill No. 261)), and then to offenders under 26 years old (Stats. 2017, ch. 684,
§ 1.5 (Sen. Bill No. 394)) at the time of the controlling offense.

incarceration. The youth parole eligible date for a person eligible for a youth offender parole hearing under this paragraph shall be the first day of the person's 25th year of incarceration." Individuals sentenced under the One Strike law, however, are not eligible for a youth offender parole hearing. (§ 3051, subd. (h).)[9]

Esquivel challenges this categorical exclusion applicable to defendants who are sentenced under the One Strike law as violating principles of equal protection, because defendants convicted of first degree murder are not excluded from eligibility.

" ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) If this showing is made and, as here, the "disputed statutory disparity implicates no suspect class or fundamental right," equal protection is denied " 'only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically

---

[9]     One Strike offenders sentenced pursuant to section 667.61 were excluded from the youth offender parole hearing scheme under section 3051 as originally enacted. (Former § 3051, subd. (h); see Stats. 2013, ch. 312, § 4 (Sen. Bill No. 260).) As currently enacted, section 3051 continues to exclude such offenders from youth offender parole hearings. (See § 3051, subd. (h).) The statute contains other exclusions which are not at issue here. (*Ibid*.)

substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74-75 (*Turnage*).) The party challenging the statute "must ' "negative every conceivable basis" ' that might support the disputed statutory disparity." (*Johnson*, at p. 881.) If a plausible basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." (*Turnage*, at p. 74.) We review Esquivel's equal protection claim de novo. (*People v. Laird* (2018) 27 Cal.App.5th 458, 469.)[10]

Esquivel contends that, as a youthful One Strike offender, he is similarly situated to youthful first degree murderers for purposes of the youth offender parole hearing law because the purpose of the law was to recognize youthful offenders' lack of maturity. Assuming without deciding that Esquivel is similarly situated to other youth offenders eligible for parole hearings under section 3051 (see *Miranda*, *supra*, 62 Cal.App.5th at p. 183, review granted), Esquivel bears the burden to "negative every conceivable basis that might support the disputed statutory disparity." (*Johnson*, *supra*, 60 Cal.4th at p. 881.)

Esquivel relies on *Edwards*, *supra*, 34 Cal.App.5th 183 to support his claim that no rational basis exists for the "Legislature to afford youth offender parole hearings to first degree murderers while denying them to One

---

10     Esquivel "does not differentiate between the state and federal Constitutions or suggest the [equal protection] analysis under either should differ. Accordingly, we address his state and federal claims together." (*In re C.B.* (2018) 6 Cal.5th 118, 133, fn. 11.)

Strikers."  In *Williams*, this court rejected the *Edwards* court's conclusion that "there is no ' "conceivable basis" ' supporting the disputed statutory disparity for [One Strike] offenders, as compared to murderers."  (*Williams, supra*, 47 Cal.App.5th at p. 492, review granted.)  This court observed that Three Strikes offenders are also excluded from section 3051, suggesting that the Legislature " 'had recidivism in mind when it excluded [O]ne [S]trike offenders.' "  (*Id*. at p. 491.)  This court further observed " 'that the Legislature has enacted several comprehensive statutory schemes that all seem to focus on the Legislature's concerns over recidivism by those who commit violent sex offenses.  The Sexually Violent Predators Act (Welf. & Inst. Code, § 660[0] et seq.) provides for the indefinite civil commitment of certain offenders who are found to suffer from a qualifying mental disorder after the completion of their prison terms.  The Mentally Disordered Offenders Act (Pen. Code, § 2690 et seq.) permits the continued detention of certain other sex offenders until they receive appropriate mental health treatment that results in remission of their disorder.  Each has the same purpose:  to protect the public from a select group of sexual offenders who are extremely dangerous and to provide treatment for them.' "  (*Id*. at pp. 491-492.)  " '[Penal Code s]ection 290 requires the lifetime registration of a large class of sex offenders, including those [who] commit assault or kidnapping with the intent to commit rape.  [Citation.]  The purpose of section 290's lifetime registration requirement is to ensure that persons convicted of the enumerated crimes be readily available for police surveillance at all times because the Legislature has deemed them likely to commit similar offenses in the future.  [Citation.]  [¶]  As we see it, the Legislature believes that most sex offenders pose a recidivism risk.' "  (*Id*. at p. 492.)

10

We recognize that the Supreme Court will resolve the issue raised in this appeal.  Pending the Supreme Court's ruling, we will continue to follow *Williams*.  (See *Opsal v. United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1203-1204.)  We therefore reject Esquivel's equal protection claim.

DISPOSITION

The judgment is affirmed.

GUERRERO, J.

WE CONCUR:

AARON, Acting P. J.

DATO, J.

11